IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TANYA GARDNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-198-S-BN |
| | § | |
| NAVIENT, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Tanya Gardner filed this *pro se* lawsuit alleging violations of the

Telephone Consumer Protection Act ("TCPA"). *See* Dkt. No. 3.

And the presiding United States district judge referred Gardner's lawsuit to

the undersigned United States magistrate judge for pretrial management under 28

U.S.C. § 636(b) and a standing order of reference.

Defendant Navient Solutions, LLC ("NSL") moved to dismiss the complaint

under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 9.

Gardner responded. *See* Dkt. No. 14. And NSL replied. *See* Dkt. No. 16.

And the undersigned enters these findings of fact, conclusions of law, and

recommendation that, for the reasons and to the extent set out below, the Court

should grant the motion and dismiss Gardner's claims.

**Legal Standards**

In deciding a motion to dismiss for failure to state a claim on which relief may

be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true,

viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("A plaintiff can allege that objects dropped in water generally get wet; the defendant dropped an object in water; and that it is therefore highly likely the object got wet. Sure, it is possible that the defendant's particular object somehow escaped the water by landing on a boat or an animal. But just as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

Accordingly, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and

conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

And, while "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (cleaned up).

That said, Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). And, because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court

must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One such reason is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

## Discussion

Gardner claims violations of the TCPA, under 47 U.S.C. § 227(b)(1)(A)(iii), based on the following allegations:

> On December 27, 2023, Defendant placed a call to Plaintiff cellular phone number ending in 1387.
> When Plaintiff answered the ATDS from the Defendant she could hear the pre-recorded message and then dead air before Defendant came on the line.
> Defendant stated Plaintiff owed an alleged debt. Plaintiff advised there was no alleged debt owed as there has never been any proof received regarding an alleged debt and to stop contacting Plaintiff.
> On January 19th, 2024, Plaintiff received another call from Defendant. When Plaintiff answers the phone to dea[d] air and then Defendant comes on the line discussing the same alleged debt. Plaintiff advised she was at work and her boss does not allow her to talk on the phone and it was an inconvenient time.
> On January 22nd, 2024, Defendant called Plaintiff multiple times during the day.
> On January 23rd, 2024, Defendant called Plaintiff again with an ATDS or predictive dialer and/or by using a prerecorded or artificial voice. Defendant came on the line advising of the same alleged debt. Plaintiff advised it was a very inconvenient time and she was at work.
> On January 25th, 2024, Defendant called Plaintiff again 3 (three) times continuing to harass, annoy, disrupt work productivity, and inconvenience Plaintiff.

Dkt. No. 3 at 3-4 (citations omitted).

- 4 -

Section 227(b) of the TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A violation of § 227(b)(1)(A)(iii) occurs if: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-cv-337-M, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2021 WL 5040228, at *3

(N.D. Tex. Oct. 29, 2021) (cleaned up).

Section 227(b) violations require the use of an automatic telephone dialing

system ("ATDS") or an "artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii).

Taking the ATDS option first,

[t]he TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). [And] the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 401 (2021) (internal quotations omitted). The Court held that, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 399. Thus to establish a claim under § 227(b), "the equipment in question must use a random or sequential number generator," not merely auto-dial stored numbers. *Id.* at 404.

*Id.* (citations modified).

In *Duguid*,

[t]he Court's discussion of the TCPA's policy aims also supports the view

> that an autodialer must be able to generate random or sequential telephone numbers. It noted that autodialers had "revolutionized telemarketing by allowing companies to dial random or sequential blocks of telephone numbers automatically." Besides annoying consumers, the autodialer "threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.'" And it could "simultaneously tie up all the lines of any business with sequentially numbered phone lines."

*Borden v. eFinancial, LLC*, 53 F.4th 1230, 1234 (9th Cir. 2022) (emphasis omitted; quoting *Duguid*, 592 U.S. at 399-400); *see also Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 395 (8th Cir. 2022) (Section 227 "'target[s] a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity.' [And t]he Court reasoned, 'Expanding the definition of an [A]utodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel.'" (quoting *Duguid*, 592 U.S. at 405)).

While Gardner does allege the use of an ATDS, those allegations are conclusory considering that, since *Duguid*, courts have emphasized the need to plausibly allege the use of an ATDS by focusing on facts that could show that the defendant's device used a random or sequential number generator to produce or store phone numbers (as opposed to another method).

As an example, the United States Court of Appeals for the Third Circuit recently summarized its prior decision, *Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867 (3d Cir. 2022):

> In *Panzarella*, we held that a loan servicer did not violate the TCPA because there was no evidence that its device used a random or sequential number generator to produce or store phone numbers. We

posed a hypothetical of a device that could make phone calls in two modes: automatic-mode, where the device dials random or sequentially generated phone numbers, or list-mode, where the device dials telephone numbers from a customer list. We explained that unlike automatic-mode calls, list-mode calls would not "threaten the harm the TCPA targets," namely, "telemarketing 'that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity.'" "Congress would have little reason," we noted, "to expose [the defendant] to liability for its list-mode calls as these calls do not present these risks."

*Perrong v. Montgomery Cnty. Democratic Committee*, No. 23-2415, 2024 WL 1651274, at *1 (3d Cir. Apr. 17, 2024) (quoting *Panzarella*, 37 F.4th 867 at 881-82).

Gardner's complaint lacks facts from which the Court may infer that NSL contacted Gardner using a random or sequential number generator.

In fact, from the facts alleged – that Gardner was contacted concerning a debt that she allegedly owed – the Court may more reasonably infer a preexisting relationship between the parties and that no "ATDS *of any kind* was used." *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2022 WL 562761, at *5 (N.D. Tex. Feb. 24, 2022) (emphasis in original); *see id.* ("The messages were sent directly to Hunsinger, and two messages address him by his first name. The direct and personal nature of the text messages weighs against a reasonable inference that Alpha Cash used an ATDS to send the messages." (citing *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 487 (W.D. Tex. 2020) ("Allegations of directly targeting specific individuals weigh against an inference that an ATDS was used."))).

But the use of an ATDS employing a random or sequential number generator is not required where a plaintiff alleges that an artificial or prerecorded voice played.

That is, "[t]o be liable under the 'artificial or prerecorded voice' section of the

TCPA, … a defendant must make a call and an artificial or prerecorded voice must actually play." *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015).

So, if a defendant "mak[es] a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA." *Id.* at 641.

> Instead, the prerecorded voice must "speak" during the call. A party who makes a call using an automatic telephone dialing system uses the system to make the call, regardless of whether the recipient answers, and thereby triggers TCPA liability. With a prerecorded voice, though, unless the recipient answers, an artificial or prerecorded voice is never *used*.

*Id.* (emphasis in original).

And Gardner does allege as to one call – the call on December 27 – that, when she answered, "she could hear the pre-recorded message and then dead air." Dkt. No. 3 at 3.

Even so, Gardner fails to allege facts that connect this call to NSL.

For example, attached to the complaint are exhibits (A through G) corresponding to the calls received (on December 27 [Ex. A], January 19 [Ex. B], January 22 [Exs. C & D], January 23 [Ex. E], and January 25 [Exs. F & G]). *See* Dkt. No. 3 at 3-4 & 7-13. All exhibits but Ex. A list Navient as the caller. *See id.* at 6-13.

Ex. A, instead, provides that the caller is Ecmc. And, in the complaint, Gardner neither explains this documentary inconsistency nor alleges facts to connect Ecmc to Navient.

And, so, the Court can only infer that Ecmc, not Navient, called Garner on December 27. *See, e.g.*, *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) ("When 'an allegation is contradicted by the contents of an exhibit

attached to the pleading, then indeed the exhibit and not the allegation controls.'"
(quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377
(5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812,
813 (5th Cir. 1940)))).

And Navient cannot be liable under the TCPA where it neither made the call
nor controlled or directed the party making the call.

In this regard, Gardner does respond to the motion to dismiss that

> Defendant states the third party listed in Exhibit A is not the Defendant
> but the third party advised they contacted Plaintiff at the request of
> Defendant which makes the Defendant vicariously liable for any
> information the Defendant provided to the third party or its agents
> without Plaintiff's consent. Defendant is also vicariously liable for any
> contact made to Plaintiff by the third party or its agents at the
> instruction of the Defendant. The third party advising of this
> information will be revealed upon the likely event of discovery.

Dkt. No. 14 at 2 (cleaned up).

But Gardner may not amend her allegations through a response to a motion to
dismiss. "[A] claim for relief" must instead be made through a pleading, FED. R. CIV.
P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed"
under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a).

Even so, Gardner's response fails to plausibly allege an agency relationship
between the party calling her on December 27 and Navient. *See Horton v. SunPath,
Ltd.*, No. 3:20-cv-1884-B-BH, 2021 WL 982344 (N.D Tex. Feb. 16, 2021) ("Under
Texas law, in order to prove agency, 'evidence must establish that the principal has
both the right: (1) to assign the agent's task; and (2) to control the means and details
of the process by which the agent will accomplish that task.' *Indian Harbor Ins. Co.*

*v. Valley Forge Ins. Group*, 535 F.3d 359, 364 (5th Cir. 2008). An agency relationship must be affirmatively established and not presumed. *See Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 677 (N.D. Tex. 1998).”), *rec. accepted*, 2021 WL 977065 (N.D. Tex. Mar. 15, 2021).

In sum, Gardner has not alleged violations of the TCPA based on the facts alleged in the complaint. The Court should therefore grant the motion to dismiss.

That said, the opportunity file objections to these findings, conclusions, and recommendation (as further explained below) allows Gardner a chance to show that this case should not be dismissed with prejudice and that the Court should instead grant her leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) (“A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave.” (citations omitted)).

But, if Gardner fails to satisfactorily show – through timely objections – a basis to amend the complaint to allege a plausible claim, the Court should dismiss this lawsuit with prejudice.

## Recommendation

The Court should grant Defendant Navient Solutions, LLC's motion to dismiss [Dkt. No. 9] and dismiss this lawsuit with prejudice unless Plaintiff Tanya Gardner satisfactorily shows – through timely objections to these findings, conclusions, and

recommendation – a basis to amend the complaint to allege a plausible claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 7, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE